1
2
3
4
5

# UNITED STATES DISTRICT COURT

6
7

## EASTERN DISTRICT OF CALIFORNIA

8  MICHAEL MCNEIL,                                CASE NO. 1:10-cv-01746-AWI-SKO PC

9              Plaintiff,                          FIRST SCREENING ORDER DENYING
                                                   MOTION FOR APPOINTMENT OF COUNSEL
10      v.                                         AND REQUIRING PLAINTIFF TO EITHER
                                                   FILE THIRD AMENDED COMPLAINT OR
11  LVN HAYES, et al.,                             NOTIFY COURT OF WILLINGNESS TO
                                                   PROCEED ONLY ON COGNIZABLE EIGHTH
12              Defendants.                        AMENDMENT CLAIMS AGAINST
                                                   DEFENDANTS HAYES, RAMAN, SOTO,
13                                                 BYERS, DOE, AND ROTMAN

14                                                 (Doc. 17)

15                                                 THIRTY-DAY DEADLINE

16  _____/

17                          **First Screening Order**

18  **I.      Screening Requirement and Standard**

19          Plaintiff Michael McNeil, a state prisoner proceeding pro se and in forma pauperis, filed this

20  civil rights action pursuant to 42 U.S.C. § 1983 on September 23, 2010.  Pending before the Court

21  is Plaintiff's second amended complaint, filed on June 28, 2011.[1]

22          The Court is required to screen complaints brought by prisoners seeking relief against a

23  governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

24  § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or

25  malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief

26  ///

27  _____

28          [1] Plaintiff filed a first amended complaint as a matter of right and a second amended complaint with leave of
court.  Fed. R. Civ. P. 15(a).  This is the first screening conducted by the Court.

                                        1

1 | from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. §

2 | 1915(e)(2)(B)(ii).

3 |      A complaint must contain "a short and plain statement of the claim showing that the pleader

4 | is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but

5 | "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

6 | do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S.Ct. 1937, 1949 (2009) (citing Bell

7 | Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  While a plaintiff's

8 | allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v.

9 | Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation

10 | omitted).

11 |      While prisoners proceeding pro se in civil rights actions are still entitled to have their

12 | pleadings liberally construed and to have any doubt resolved in their favor, the pleading standard is

13 | now higher, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), and to survive

14 | screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to

15 | allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged,

16 | Iqbal, 556 U.S. at __, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. U.S. Secret Service, 572

17 | F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not

18 | sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.  Iqbal,

19 | 556 U.S. at __, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

20 | **II.**   **Plaintiff's Claims**

21 |     **A.**   **Summary of Allegations**[2]

22 |      Plaintiff, who is currently incarcerated at California State Prison-Corcoran, brings this action

23 | against medical staff at the California Substance Abuse Treatment Facility (CSATF) for allegedly

24 | violating his rights under the First and Eighth Amendments of the United States Constitution.

25 |

26 | [2] Plaintiff's complaint is rife with references to prison regulations and operational procedures.  Citations to and summarization of those regulations and procedures are omitted from this order because they are irrelevant to the issue of whether Plaintiff has stated federal claims.  To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, section 1983 offers no redress.  Ove v. Gwinn, 264 F.3d 817, 824 (9th Cir. 2001) (citing Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997)) (quotation marks omitted).

Plaintiff names Chief Medical Officer Enenmoh; Doctors Rotman and Raman; Licensed Vocational Nurse P. Hayes; Physician's Assistant T. Byers; Registered Nurses Soto, Guiteras, Villasno, and Capra; Health Care Appeals Coordinator G. Miller; and an unspecified number of Does as defendants. Plaintiff seeks damages and injunctive relief in the form of proper diagnostic testing and treatment for pain.

**1.    Defendants Hayes and Raman**

Plaintiff was incarcerated at CSATF from August 2000 to September 2009. He suffers from degenerative disc disease, and he has multiple disc herniation in his neck and lower back with spinal compression. As a result of his medical condition, Plaintiff suffers from severe pain and an anterior cervical discectomy was recommended by a neurosurgeon, although Plaintiff apparently declined to consider surgery. (E.g., Comp., Ex. 1, p. 5.)

Plaintiff's claims arise from events commencing on March 23, 2009, when he went to the medical clinic for his morning dose of the pain medications morphine and gabapentin. When Defendant Hayes handed Plaintiff his medication, he took it. Plaintiff opened his mouth and displayed his empty cup in compliance with the requisite visual inspection. Defendant Hayes became belligerent and ordered Plaintiff to run his fingers around the inside of his mouth, which Plaintiff refused to do because it was in contravention of applicable regulations and because he believed it to be unsanitary given that his hands had not been washed. Defendant Hayes threatened to sound her alarm if Plaintiff did not comply. Plaintiff again refused, citing to the applicable procedure that was to be followed if Defendant believed Plaintiff had "cheeked" his medication.

Defendant Hayes sounded her alarm, and Plaintiff had to lie on his stomach, at which time he was handcuffed, taken to the program office, and strip searched. No contraband was found, and Plaintiff was placed in a holding cell for 90 minutes and released.

When Plaintiff returned to the clinic later in the day for his 12:00 p.m. dose of medication, Defendant Hayes informed him that she had told Defendant Raman, the physician on duty that day, that she believed Plaintiff had cheeked his medication and she requested his morphine be

discontinued.[3]  Defendant Raman agreed and signed a discontinuation order, in contravention of the applicable procedures, which required that Plaintiff be interviewed and that any suspicion regarding the failure to take prescribed medication be reported to the prescriber of the medication.  Defendant Hayes also informed Plaintiff that she was issuing him a serious rules violation report (CDCR-115) for disobeying a direct order, which Plaintiff alleges she lacked the authority to do as a contract employee with the prison.

Plaintiff asked Defendant Hayes if she was a registered nurse or a licensed vocational nurse – information he wanted to file a complaint against her with the licensing board.  Defendant Hayes responded that she was a licensed vocational nurse, but she would not tell Plaintiff whether she was a contract employee or a state employee; she sarcastically asked Plaintiff if he was a man or a mouse. Refusing to be bated, Plaintiff left the clinic.

Later, Plaintiff was informed by other inmates that Defendant Hayes disparaged him after he left, calling him "a piece of shit" and "a child molester."  (2nd Amend. Comp., ¶30.)  Plaintiff also alleges that Defendant Hayes tried to get Correctional Officer Fitzpatrick, who was stationed at the clinic and standing next to her, to place Plaintiff in administrative segregation for threatening her. Fitzpatrick, however, declined to take action and stated he did not observe Plaintiff making any threats.

Plaintiff alleges that Defendant Hayes has a history of retaliating against inmates she does not like by falsely accusing them of cheeking their meds.  Plaintiff further alleges that Defendant Raman failed to review his medical file before discontinuing his pain medication and Raman was not Plaintiff's primary care physician, and thus lacked knowledge of Plaintiff's medical history and the extent to which Plaintiff's medical issues affected his major life activities.  Plaintiff alleges that as a result of Defendant Raman's actions, he went without pain medication for thirty-five days and suffered from withdrawal, extreme pain, sleeplessness, and increased mobility impairment.  Plaintiff thereafter filed an inmate appeal against Defendant Hayes.

[3] Plaintiff initially alleges that Defendant Rotman was the physician on duty to whom Defendant Hayes reported her suspicions and made her request.  However, Plaintiff's subsequent allegations identify the doctor as Raman and there is no basis presented for inferring that both Defendant Rotman and Defendant Raman were involved in this particular event.  Therefore, the Court refers to the defendant as Raman rather than Rotman.

4

On March 26, 2009, Plaintiff gave another inmate a request for medical services form to hand in for him because he feared retaliation from Defendant Hayes if he handed it in himself.  Plaintiff was later informed that Defendant Hayes read the form, laughed, crumpled it up, and threw it on the ground.[4]  Plaintiff alleges that as a result of the morphine discontinuation, he suffered initially from pain, perspiration, a runny nose, and agitation, and then from more severe pain, hyperactivity, rapid breathing, fever, tremors, muscle twitches, hot and cold flashes, loss of sleep, muscles aches, and diarrhea.

### 2.   **Defendant Villasno**

On March 24, 2009, Plaintiff was seen by Defendant Villasno, a nurse at the clinic.  Plaintiff told Defendant Villasno about his pain and withdrawal symptoms following the discontinuation of his medication.  Defendant Villasno acted with understanding, and she went into the next room and asked Defendant Rotman, a doctor, if he could see Plaintiff and do something about his pain and discontinued medication.  Plaintiff overheard Defendant Rotman refuse to see him and tell Defendant Villasno that he had to wait for the resolution of the rules violation report issued by Defendant Hayes.  Defendant Villasno returned and told Plaintiff that she could not do anything for him because it was up to the doctor to prescribe medication and he did not want to see Plaintiff.

### 3.   **Defendant Soto**

On March 26, 2009, Plaintiff was seen at the medical clinic by Defendant Soto, a registered nurse.  Plaintiff informed her that his pain medication had been discontinued, that he was in extreme pain, and that he needed to see a doctor; and he showed her his medical records.  Defendant Soto became belligerent, told Plaintiff she could not do anything for him, and refused to seek help from the doctor on duty, who had the authority to help Plaintiff.  Defendant Soto then threatened to issue Plaintiff a serious rules violation report if he did not leave the clinic, and she refused to process a request for medical services.

### 4.   **Defendant Byers**

On March 31, 2009, Plaintiff saw Defendant Byers, a physician's assistant at the medical

[4] The Court questions whether Plaintiff intended to allege March 23, 2009, rather than March 26, 2009.

clinic.  He again explained his medication had been discontinued after Defendant Hayes falsely accused him of cheeking his medication, and relayed that he was in extreme pain and going through withdrawal.  Defendant Byers performed a perfunctory exam and told Plaintiff that due to the issuance of the rules violation report by Defendant Hayes, he would be recommending to the medical authorization review committee and Defendant Rotman, who was Plaintiff's primary care physician, that Plaintiff's morphine be discontinued and replaced with ibuprofen.  Plaintiff told Defendant Byers that he had been found not guilty of the rules violation the previous day.  Defendant responded that although he had not been aware of that fact, he was still going to make the recommendation because he did not believe there was anything wrong with Plaintiff or that he was in pain.  Plaintiff argued that his medical records demonstrated otherwise, but Defendant Byers was dismissive and said there was nothing wrong with Plaintiff.

### 5.  Defendants Doe and Rotman

On April 10, 2009, Plaintiff was seen by Page, a registered nurse.  Plaintiff informed Page of the false accusation against him by Defendant Hayes and her persuasion of Defendant Raman to discontinue his pain medication.  Plaintiff told Page that he was in great pain, and she reviewed his medical file and counted the eighteen requests for health care forms that had been ignored by medical staff.  Page then contacted medical scheduling and demanded that Plaintiff be scheduled to see a doctor; she thereafter informed Plaintiff that he would be seen within three days.

Plaintiff alleges that Defendant John or Jane Doe, an office technician whose duties included scheduling medical appointments for inmates, conspired with Defendant Hayes to prevent Plaintiff from receiving medical care by failing to submit Plaintiff's health care request forms for processing.

Plaintiff was seen by Defendant Rotman, his primary care doctor, on April 13, 2009.  Defendant Rotman told Plaintiff that because Plaintiff was found not guilty of cheeking medication, he would submit an order for daily morphine to Defendant Enenmoh for approval.  Plaintiff has been enrolled in the chronic care program for his degenerative disc disease and resulting pain since 2005, and as a chronic care patient, Defendant Rotman was responsible for providing care to Plaintiff, which included prescribing necessary medication.  Physicians only needed the approval of the Chief Medical Officer and/or the Narcotics Committee if the medication being prescribed was non-

formulary.  Since Plaintiff's medication was formulary, Plaintiff alleges that Defendant Rotman did not need the approval of Defendant Enenmoh to prescribe morphine.

Plaintiff asked Defendant Rotman why he allowed Plaintiff to suffer for so long when he and other medical staff were well aware of Plaintiff's medical condition and need for pain relief; why Plaintiff's pain medication was abruptly discontinued instead of tapered and without a urine test, as required by policy; and why he refused to speak to Plaintiff several weeks earlier when asked to do so by Defendant Villasno.  Defendant denied any knowledge of the relevant policies and refused to answer Plaintiff's other questions.

**6.     Defendant Enenmoh**

On March 23, 2009, Plaintiff filed an inmate appeal grieving Defendant Hayes' actions earlier that day, which placed Defendant Enenmoh on notice that Plaintiff's pain medication had been discontinued.  Plaintiff further alleges that his submission of eighteen health care services request forms between March 23, 2009, and April 11, 2009, placed Defendant Enenmoh on notice of Plaintiff's condition.  As Chief Medical Officer, Defendant Enenmoh had the authority to reissue Plaintiff's pain medication, but he delayed approval until April 28, 2009.

**7.     Defendant Capra**

On March 29, 2009, Plaintiff sent Defendant Capra, a registered nurse, copies of complaints he filed against Defendant Hayes and he informed Defendant Capra that Defendant Hayes was behaving abusively toward inmates.  Plaintiff also informed Defendant Capra via a CDCR-GA-22 request for interview form about the discontinuation of his pain medication and Defendant Hayes' abusive behavior.  Plaintiff told Defendant Capra that he could prove Capra's subordinate staff was acting with deliberate indifference, and that he had shown medical staff OP-430, which is a multi-page operational procedure dealing with medication management, and they stated they had never seen it.  (Ex. 2.)  Plaintiff requested that Defendant Capra train his nursing staff on the requirements for medication distribution and for reporting suspected inmate misconduct as set forth in OP-430.

On April 4, 2009, Defendant Capra responded by informing Plaintiff that the issue had been addressed, he had documentation of training on OP-430, and copies of OP-430 were posted in the yard medical clinics.

7

1    However, on May 20, 2009, and May 26, 2009, nurses Parra and Montanez crushed

2   Plaintiff's time-release morphine and attempted to dispense it to him in that manner, in contravention

3   of OP-430.  Plaintiff alleges that crushing time-release morphine can cause a dangerously high level

4   of morphine to enter the bloodstream at one time.

5        At those times, Plaintiff asked the nurses if Defendant Capra had trained them regarding OP-

6   430 and if OP-430 was posted in the clinic.  Both nurses denied knowledge of OP-430 and neither

7   nurse could find a copy in the office.

8        Plaintiff alleges this evidences the falsity of Defendant Capra's claim that he trained staff on

9   OP-430.  Plaintiff alleges that Defendant Capra's failure to properly train and supervise staff

10  regarding the crushing of morphine could have resulted in an overdose.

11              **8.    Defendant Miller**

12       On April 19, 2009, Plaintiff filed a staff complaint against Defendant Miller, the health care

13  appeals coordinator, for repeatedly rejecting his emergency medical appeal.  Plaintiff's appeal was

14  rejected for lack of sufficient documentation, but Plaintiff alleges he filed it as an emergency appeal

15  to bypass the regular appeals process requirements.  Plaintiff also alleges that Defendant Miller

16  wrongfully told him that he could not use a health care appeal to request health care services and

17  rejected his appeal on the basis.

18       After repeated rejection for purported procedural violations, Plaintiff's inmate appeal was

19  finally accepted for review as an emergency appeal and assigned a log number on May 18, 2009,

20  fifty-one days after it was first rejected as an emergency appeal.  On July 8, 2009, Defendant Miller

21  was assigned to interview Plaintiff regarding his appeal at the second level of review, despite the fact

22  that Plaintiff had filed a staff misconduct complaint against Defendant that was still pending.

23       Plaintiff describes Defendant Miller as hostile and unprofessional during the interview.

24  Plaintiff questioned whether Defendant Miller had any medical training and if not, if it was a policy

25  to send non-medical staff to conduct interviews related to medical issues.  Defendant Miller stated

26  that there was no regulation against it, and Plaintiff showed him copies of three screen-out forms

27  dated March 25, 2009, April 13, 2009, and June 29, 2009, that bore Defendant's signature.  The

28  signatures did not match and Plaintiff asked Defendant which signature was his so Plaintiff could

identify the other two signatories.  Defendant Miller then terminated the interview and stormed out of Plaintiff's housing unit.

Plaintiff alleges that fifty days after filing his original complaint, he suffered retaliation against him by prison staff, which included events after he was transferred from CSATF to Pleasant Valley State Prison.[5]

**B.      Eighth Amendment Medical Care Claims**

**1.      Legal Standard**

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by those acting under color of state law.  E.g., Patel v. Kent School Dist., 648 F.3d 965, 971 (9th Cir. 2011); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  For *each* defendant named, Plaintiff must show a causal link between the violation of his rights and an action or omission of the defendant.  Iqbal, 556 U.S. at __, 129 S.Ct. at 1949-50; Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  There is no *respondeat superior* liability under section 1983, and each defendant may only be held liable for misconduct directly attributed to him or her.  Iqbal, 556 U.S. at __, 129 S.Ct. at 1949-50; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must show deliberate indifference to his serious medical needs.  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 295 (1976)) (quotation marks omitted).  The two-part test for deliberate indifference requires the plaintiff to show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2) the defendant's response to the need was deliberately indifferent.  Jett, 439 F.3d at 1096 (quotation marks and citation omitted).

---

[5] Plaintiff states that his retaliation claims against staff are in the process of being exhausted and he will raise them in a separate suit.  (2nd Amend. Comp., ¶¶94-101.)  Because those allegations do not form the basis for any claim in this action, the Court omits any further summarization of them.  In as much as this suit is limited to events at CSATF, any claims arising from events at Pleasant Valley State Prison must be raised in a separate action in any event.  Fed. R. Civ. P. 18(a), 20(a)(2); Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Deliberate indifference may be manifested when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care, <u>Jett</u>, 439 at F.3d 1096 (citation and quotations omitted), but it is a high legal standard, <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004) (quotation marks omitted).  Prison officials must not only be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, but they must also draw the inference.  <u>Toguchi</u>, 391 F.3d at 1057 (citation and quotation marks omitted).  If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.  <u>Id.</u> (citation and quotation marks omitted).

**2.  <u>Discussion</u>**

The Court finds that Plaintiff's allegations against Defendants Hayes, Raman, Soto, Byers, Doe, and Rotman are sufficient to support claims for violation of the Eighth Amendment.[6]  Plaintiff has pled the existence of serious medical needs requiring pain medication, <u>Lopez v. Smith</u>, 203 F.3d 1122, 1131 (9th Cir. 2000), and any decision to abruptly discontinue that necessary medication must be medically appropriate, <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1986).  Plaintiff has sufficiently alleged the absence of any medical reason for the discontinuation of his pain medication, <u>Jackson</u>, 90 F.3d at 332, and he has sufficiently alleged further injury caused by the interruption in his pain medication, <u>Clement v. Gomez</u>, 298 F.3d 898, 904 (9th Cir. 2002).  However, Plaintiff's allegations against Defendant Villasno, Enenmoh, Capra, and Miller do not state claims and Plaintiff's complaint does not set forth any allegations against Defendant Guiteras.

There is no support for Plaintiff's claim that Defendant Villasno acted with deliberate in difference toward him.  Defendant Villasno saw Plaintiff on one occasion, she received his medical complaint, and she relayed the situation to the doctor on duty, as was proper.  Defendant Villasno was allegedly sympathetic to Plaintiff's plight, but the doctor on duty, Rotman, refused to see Plaintiff or provide him with any medical care.  The doctor's failure to respond to Plaintiff's need

---

[6] Plaintiff's allegations against Doe are brief, but his request for health care forms were sufficiently detailed regarding his need for medical care to put the reviewer of those forms on notice regarding his medical issues.  (Ex. 10.)  The intentional failure to process eighteen forms, which resulted in Plaintiff's inability to obtain medical care, is sufficient to support a claim of deliberate indifference at the pleading stage.

1    for medical care on that date provides a basis for liability against the doctor, but what more

2    Defendant Villasno could or should done and how she acted with deliberate indifference are most

3    unclear.  Accordingly, no plausible claim is stated.  Iqbal, 556 U.S. at __, 129 S.Ct. at 1949

4    (quotation marks omitted); Moss, 572 F.3d at 969.

5         Defendant Enenmoh may not be held liable based on his position as Chief Medical Officer.

6    Iqbal, 556 U.S. at __, 129 S.Ct. at 1949-50; Ewing, 588 F.3d at 1235.  Plaintiff's allegation that by

7    virtue of his submission of an inmate appeal, Defendant Enenmoh was placed on notice that he was

8    being denied pain medication is utterly lacking in factual support.  Plaintiff's exhibits include a

9    response to the appeal by Defendant Enenmoh; however, the response is dated August 28, 2009, and

10   it does not support a claim that between March 23, 2009, and late April/early May 2009, Defendant

11   Enemoh knowingly disregarded Plaintiff's serious medical needs.  (Ex. 7.)

12        Plaintiff's complaint to Defendant Capra about Defendant Hayes' abuse of authority, set forth

13   in an "Inmate Request for Interview," is also insufficient to support a claim under the Eighth

14   Amendment.  (Ex. 13.)  There is no indication Defendant Capra was involved in denying Plaintiff

15   medication for his chronic, severe pain, which is the basis for this suit, and Capra's receipt of

16   Plaintiff complaint in his capacity as supervising registered nurse does not render him liable for

17   Hayes' misconduct.  Iqbal, 556 U.S. at __, 129 S.Ct. at 1949-50; Ewing, 588 F.3d at 1235.  Also

18   irrelevant are Plaintiff's allegations regarding OP-430 and medication crushing.  Nurses Parra and

19   Montanez's actions do not form the bases for any claims in this action, and Plaintiff's written

20   standoff with Defendant Capra regarding whether staff was trained on OP-430 and whether it was

21   posted in the medical offices does not assist Plaintiff in stating a claim against Defendant Capra for

22   violating his rights between March 2009 and late April/early May 2009 related to the discontinuation

23   of Plaintiff's pain medication.

24        Finally, Defendant Miller was involved in processing Plaintiff's health care appeal.  Although

25   Plaintiff believes his appeal should have been processed as an emergency appeal, he may not base

26   a claim on Defendant Miller's alleged wrongful rejection of his appeal.  Defendant Miller reviewed

27   the appeal and made an administrative determination that it did not qualify as an emergency appeal.

28   The violation of prison regulations governing inmate appeals, assuming a violation occurred, does

1   not support a constitutional claim. Ove, 264 F.3d at 824.

2       Plaintiff may also not mount a claim against Defendant Miller because he interviewed

3   Plaintiff regarding Plaintiff's inmate appeal, despite the pendency of Plaintiff's staff misconduct

4   against him.  Again, to the extent that prison regulations or protocols were broken, that provides no

5   basis for a constitutional claim. Id.  Plaintiff's allegations do not support a plausible claim that

6   Defendant Miller knowingly disregarded a substantial risk of harm to Plaintiff's health via his

7   involvement in the administrative processing of Plaintiff's inmate appeal. Jett, 439 F.3d at 1096.

8       **C.    First Amendment Retaliation Claim**

9       Plaintiff also alleges a retaliation claim against Defendants Hayes and Miller.  Allegations

10  of retaliation against a prisoner's First Amendment rights to speech or to petition the government

11  may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also

12  Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th

13  Cir. 1995).  "Within the prison context, a viable claim of First Amendment retaliation entails five

14  basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

15  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise

16  of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

17  correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); accord Brodheim

18  v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

19      Although Plaintiff alleges that Defendant Hayes retaliated against him for filing a grievance

20  against her by calling him names in front of other inmates and crumpling up his health care request

21  form, Plaintiff's allegations fall short of supporting a plausible claim that Defendant Hayes took

22  action against him *because* he filed the grievance against her. Brodheim, 584 F.3d at 1271.  (2nd

23  Amend. Comp., ¶30-32, 108.)  Instead, Plaintiff's allegations indicate that he filed an appeal *after*

24  the events with Defendant Hayes transpired.  Further, regarding Plaintiff's allegation that Defendant

25  Hayes retaliates against inmates she does not like by falsely accusing them of cheeking their

26  medication, there is no exercise of a protected activity alleged and therefore, no retaliation claim lies.

27  (Id., ¶32.)

28  ///

Plaintiff also alleges that Defendant Miller intentionally delayed Plaintiff's medical care by refusing to accept his emergency appeal. These allegations do not support a plausible claim that Defendant Miller took adverse action against Plaintiff *because of* Plaintiff's exercise of a protected First Amendment right. Brodheim, 584 F.3d at 1271.

### D. Claim for Injunctive Relief

In addition to damages, Plaintiff seeks an injunction mandating that he be provided with medical care. The Eighth Amendment medical care claims in this action arise from events which occurred at CSATF in 2009. Plaintiff is no longer incarcerated at CSATF and the events at issue were confined to an approximately one or two-month period of time almost three years ago. Therefore, Plaintiff lacks standing in this action to seek injunctive relief aimed at providing for his current or future medical needs, and this action may proceed only for damages. 18 U.S.C. § 3626(a)(1)(A); Summers v. Earth Island Institute, 555 U.S. 488, 493, 129 S.Ct. 1142 (2009); City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S.Ct. 1660 (1983); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010).

## III. Motion for Appointment of Counsel

In his complaint, Plaintiff seeks the appointment of counsel. Plaintiff does not have a constitutional right to the appointment of counsel in this action. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009); Storseth v. Spellman, 654 F.2d 1349, 1353 (9th Cir. 1981). The Court may request the voluntary assistance of counsel pursuant to 28 U.S.C. § 1915(e)(1), but it will do so only if exceptional circumstances exist. Palmer, 560 F.3d at 970; Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1981). In making this determination, the Court must evaluate the likelihood of success on the merits and the ability of Plaintiff to articulate his claims *pro se* in light of the complexity of the legal issues involved. Palmer, 560 F.3d at 970 (citation and quotation marks omitted); Wilborn, 789 F.2d at 1331. Neither consideration is dispositive and they must be viewed together. Palmer, 560 F.3d at 970 (citation and quotation marks omitted); Wilborn 789 F.2d at 1331.

In the present case, the Court does not find the required exceptional circumstances. Even assuming Plaintiff is not well versed in the law and has made serious allegations which, if proved, would entitle him to relief, his case is not exceptional. The Court is faced with similar cases almost

1   daily. Therefore, Plaintiff's request for the appointment of counsel is denied.

2   **IV.   Conclusion and Order**

3       Plaintiff's second amended complaint states cognizable claims for relief against Defendants

4   Hayes, Raman, Soto, Byers, Doe, and Rotman for violation of the Eighth Amendment, but it does

5   not state an Eighth Amendment claim against any other named defendant and it does not state a

6   cognizable First Amendment retaliation claim.   Plaintiff has not previously been provided with

7   notice of the deficiencies in his claims and therefore, the Court will grant Plaintiff leave to amend

8   to cure those deficiencies which Plaintiff believes, in good faith, are curable.  Lopez v. Smith, 203

9   F.3d 1122, 1130 (9th Cir. 2000); Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  If

10   Plaintiff amends, he may not change the nature of this suit by adding new, unrelated claims in his

11   third amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot"

12   complaints).

13       If Plaintiff does not wish to file a third amended complaint and he is agreeable to proceeding

14   only against Defendants Hayes, Raman, Soto, Byers, Doe, and Rotman, he may file a notice

15   informing the Court that he does not intend to amend and he is willing to proceed only on his

16   cognizable claims.  The other defendants and Plaintiff's retaliation claim will then be dismissed, and

17   the Court will provide Plaintiff with the requisite forms to complete and return so that service of

18   process may be initiated on Defendants Hayes, Raman, Soto, Byers, Doe, and Rotman.

19       If Plaintiff files a third amended complaint, it should be brief, Fed. R. Civ. P. 8(a), but it must

20   state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights,

21   Iqbal, 556 U.S. at __, 129 S.Ct. at 1948-49.  Although accepted as true, the "[f]actual allegations

22   must be [sufficient] to raise a right to relief above the speculative level. . . ."  Twombly, 550 U.S.

23   at 555 (citations omitted).

24       Finally, an amended complaint supercedes the prior complaint, Forsyth v. Humana, Inc., 114

25   F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and it must be

26   "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

27   Therefore, "[a]ll causes of action alleged in an original complaint which are not alleged in an

28   amended complaint are waived."  King, 814 F.2d at 567 (citing to London v. Coopers & Lybrand,

14

644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1.    Plaintiff's motion for the appointment of counsel is denied;

2.    The Clerk's Office shall send Plaintiff a complaint form;

3.    Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

    a.    File a third amended complaint curing the deficiencies identified by the Court in this order, or

    b.    Notify the Court in writing that he does not wish to file a third amended complaint and he is willing to proceed only against Defendants Hayes, Raman, Soto, Byers, Doe, and Rotman on his Eighth Amendment medical care claims; and

4.    If Plaintiff fails to comply with this order, this action will be dismissed, without prejudice, for failure to obey a court order.

IT IS SO ORDERED.

**Dated:    March 11, 2012**                        /s/ Sheila K. Oberto
                                                 UNITED STATES MAGISTRATE JUDGE